IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| FRANK MUCERINO III and ) | |
| CREEKSIDE TERRACE LLC, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Case No. 3:21-cv-00284 |
| ) | |
| CHARLES JOSHUA DALE MARTIN, ) | |
| ) | |
| Defendant ) | |

## DEFENDANT MARTIN'S PETITION TO DISMISS PURSUANT TO THE TENNESSEE PUBLIC PARTICIPATION ACT[1]

### I. INTRODUCTION

This is a Strategic Lawsuit Against Public Participation (a "SLAPP-suit") masquerading as defamation and false light privacy claims. Defendant Martin statements were made in a private Facebook group which consisted of individuals who purchased homes constructed by the Plaintiffs in a subdivision developed by the Plaintiffs. Rather than address the concerns Mr. Martin raised in his private Facebook post, Plaintiffs have attempted to silence him with this SLAPP-suit, which Plaintiff Mucerino's wife posted on Facebook as a warning to others. Mr. Martin's comments were true, legal, and fall safely within the protections guaranteed by the First Amendment. Because Plaintiffs sued Mr. Martin for exercising his right to free speech, Mr. Martin petitions this Court to dismiss the Plaintiffs' Complaint and to sanction the Plaintiffs under the Tennessee Public

---

[1] On June 7, 2021, Defendant moved the Court to extend the time for filing this TPPA Petition until Defendant's jurisdictional challenge is resolved. *See* Doc. 10. Plaintiff opposed an extension requiring Defendant to file this Petition before his jurisdictional challenge is resolved and before a responsive pleading date is set.

Participation Act, Tenn. Code Ann. § 20-17-101, *et seq.* (the "TPPA").[2]

## II. **FACTS**

Plaintiff Mucerino is a member of Plaintiff Creekside Terrace, LLC, a company that developed the Camp Ravine Estates subdivision ("Camp Ravine") in Burns, Dickson County, Tennessee. (Compl., Doc. 1, ¶ 1.) On May 29, 2020, Mr. Martin purchased his home located at 14 Evergreen Trail in Camp Ravine. (**Exhibit 1**, Martin Decl., ¶ 2.) Since purchasing his home in Camp Ravine, Mr. Martin has learned of and observed many unresolved issues related to his home, his neighbors' homes, and the Camp Ravine subdivision. Those issue include, but are not limited to: (a) neglected/deteriorating drainage sites; (b) no sidewalks or curbs in the neighborhood even though they are shown on the plans; and (c) a high erosion potential with no mitigation plans. (Martin Decl., ¶ 3.)

Mr. Martin is a member of a private Facebook group named "Residents of Camp Ravine Estates & Cottages at Sycamore Ridge" which, as of March 22, 2021, had 55 members consisting of Camp Ravine and Cottages of Sycamore Ridge[3] home owners. (Martin Decl., ¶ 4.) Like other members of the private Facebook group, Mr. Martin submits posts regarding issues related to Camp Ravine. On March 22, 2021, Mr. Martin posted the following:

> Hey neighbors, I'm sure all of you are aware that there are many unresolved issues with our neighborhood that the developer is responsible for, but we know he has no plans to fix them and is now reportedly moving away.
>
> It seems to me the advice of the city attorney to lawyer up will be a waste of time and money especially if Frank the developer claims bankruptcy.

---

[2] Defendant is aware of the decision in *Lampo Grp., LLC v. Paffrath*, No. 3:18-CV-01402, 2019 WL 3305143 (M.D. Tenn. July 23, 2019), related to California's anti-SLAPP statute. The application of Tennessee's anti-SLAPP statute has not been decided in the Sixth Circuit.

[3] Cottages at Sycamore Ridge is another subdivision developed by the Plaintiffs. *See Creekside Terrace LLC v. Town of Burns Municipal Planning Commission, et al.*, United States District Court for the Middle District of Tennessee Case No. 3:21-cv-00248, Compl., Doc. 1, ¶ 2, a case also before this Court.

> In my opinion, the best course of action would be to schedule a time on the City Hall agenda to have our case heard with all of the problems the engineer has noted that Karla Cobbs has posted here previously. This will require everyone to participate, attend, and compile evidence of the issues caused by the developer.
>
> Please let me know your thoughts.

(Martin Decl., ¶ 5, Ex. A; Compl., ¶ 1.) The "unresolved issues with our neighborhood" referenced in Mr. Martin's post included, without limitation, the issues identified above. (Martin Decl., ¶ 6.) The "problems the engineer has noted" referenced in Mr. Martin's post are contained in the chart attached as Exhibit B to Mr. Martin's Declaration. Those problems include, but are not limited to, the following:

1. The lack of erosion prevention and sediment control across the entire Camp Ravine, as demonstrated by a silt fence which was not erected and over an inch of mud on some roadways;

2. Drainage issues for lots 47, 48, 49;

3. Grading on Lot 47;

4. Improperly installed fire hydrants;

5. Lack of sidewalks throughout Camp Ravine (upon information and belief, Plaintiffs were denied a variance from the City of Burns Planning Commission to not install sidewalks);

6. Storm water diversion around ditches;

7. Failure to install curb and gutter inlets in Camp Ravine Phase 6;

8. Failure to install sediment basins; and

9. No site stormwater detention.

(Martin Decl., ¶ 7, Ex. B.) The "unresolved issues with our neighborhood" referenced in Mr. Martin's post also included, without limitation, the issues identified in Exhibit B to Mr. Martin's Declaration. (Martin Decl., ¶ 8.) Because Plaintiffs developed and built Camp Ravine, Mr. Martin genuinely believed Plaintiffs are responsible for the issues identified above, among other things. (Martin Decl., ¶ 9.) Further, Mr. Martin sincerely believed Plaintiffs had no plans to fix the unresolved issues referenced in his Facebook post. (Martin Decl., ¶ 10.)

Many of the issues referenced by Mr. Martin are well known, and they are being addressed by the Town of Burns Planning Commission. On November 9, 2020, the Town of Burns Planning Commission sent Plaintiff Mucerino a *Notice of Action Letter* (the "Letter"). The Letter states:

> This letter is in regard to the Camp Ravine Estates, Phases 1-6 ("Camp Ravine") . . . and is sent pursuant to the decision of the Town of Burns Planning Commission ("Planning Commission").
>
> ***
>
> On November 4, 2020, the Planning Commission held a special called meeting, with notice, concerning Camp Ravine. After hearing from the Town Attorneys and the Town's engineer, Kevin Blackburn . . ., as well as concerns from citizens of the Town, the Planning Commission deliberated the appropriate next steps and made two (2) separate motions that concern Camp Ravine and the Developer. Said motions are outlined below:
>
> 1. Motion for the Town's engineer to create a formal report broken down by section and identifying any deficiencies and/or deviations from the plats for each phase of the Camp Ravine Estates development, and further identifying any suspected violations of federal, state, or local law.
>
> Motion to the require above: passed (5-0).
>
> ***
>
> 2. Motion to require the developer to provide "As-Builts" and drainage calculations, both before and after development, as required by the subdivisions regulations, for all phases of the Camp Ravine Estates within thirty (30) days, or the Town Attorney is to file for injunctive relief to stop the issuance of all building permits

> and certificates of occupancy until the aforementioned "As-Builts" and drainage calculations are produced.
>
> Motion to require the above; passed (5-0).
>
> \*\*\*
>
> The Planning Commission trust that you take this matter seriously and works with the Town's engineer to provide the documentation required. Failure to do so will result in injunctive relief previously outlined.

(**Exhibit 2**, Town of Burns Planning Commission Letter, 11/9/202, filed in *Creekside Terrace LLC v. Town of Burns Municipal Planning Commission, et al.*, United States District Court for the Middle District of Tennessee Case No. 3:21-cv-00248, Doc. 1-2.)

Prior to March 22, 2021, Mr. Martin was advised that Camp Ravine owners spoke with Timothy V. Potter, attorney for the Town of Burns, regarding Plaintiffs' failure to resolve the issues for which Mr. Martin and other Camp Ravine owners believe Plaintiffs are responsible. Mr. Martin was further advised that Mr. Potter suggested Camp Ravine owners retain an attorney and sue Plaintiffs. (Martin Decl., ¶¶ 11-12.) On March 22, 2021, Mr. Martin sincerely believed that any legal action against Plaintiff Mucerino would be a waste of time and money if Mr. Mucerino filed bankruptcy, and that the best course of action was to address the unresolved issues with the Town of Burns Planning Commission or other governmental agency. (Martin Decl., ¶¶ 13-14.)

Instead of addressing the concerns raised in the Town of Burns Planning Commission's Letter, on March 23, 2021, Plaintiff Creekside filed suit against the Town of Burns' Planning Commission, several members of the Planning Commission, and the Town of Burns' city attorney, Timothy V. Potter, in the matter *Creekside Terrace LLC v. Town of Burns Municipal Planning Commission, et al.*, United States District Court for the Middle District of Tennessee Case No. 3:21-cv-00248, which is pending before this Court.

Similarly, instead of addressing the concerns raised by Mr. Martin in his private Facebook post, Plaintiffs filed this defamation and false light privacy action against Mr. Martin to intimidate him and to dissuade other Camp Ravine owners from criticizing Plaintiffs. On April 15, 2021, shortly after Plaintiffs filed this action, Plaintiff's wife, Stephanie Mucerino, who claims to be the bookkeeper and a representative of Plaintiff Creekside Terrace, announced and posted both lawsuits on her Facebook page. (Martin Decl., ¶¶ 15-16, Exs. C-D.) The responses to Mrs. Mucerino's posts are very telling and demonstrate that any negative impact on Plaintiffs' professional reputations was caused by the public's perception of the quality of Plaintiffs' work, not Defendant Martin's post in a private Facebook group consisting of Camp Ravine owners. For example, user "Josh Ray" responded:

> Stephanie are you even being serious with posting this let alone yall trying to sue somebody. Yall are just mad bc everybody in the subdivision is pissed bc they bought some horribly built homes. And as far as your sales going down, it's not bc of rumors gone around, it's bc yall throw up poorly built homes. There's too many other builders in the area who build way better houses.

Similarly, user "Deven Ragan: responded:

> They're suing because a lot of people that live in those houses are about to sue or have sued them because the homes allegedly have lots of water problems, structural problems, and weren't built up to code's and they won't stand behind their builders warranty and make it right and fix the issues. The new homeowners are getting stuck with lots of money having to fix problems that should have never been an issue in the first place if the homes were built correctly.

User "Melanie Hinckley" posted, "[s]o glad we didn't buy there!"

(Martin Decl., ¶¶ 17-19, Exs. E-G.) It remains to be seen whether Plaintiffs will sue these individuals for defamation or what other steps Plaintiffs will take to prevent Camp Ravine homeowners from exercising their free speech rights.

6

## III. ARGUMENT

### A. The Tennessee Public Participation Act.

The TPPA, which was adopted to deter, expeditiously resolve, and punish SLAPP-suits like this one, provides that "[i]f a legal action is filed in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may petition the court to dismiss the legal action" subject to the specialized provisions of Tennessee Code Annotated § 20-17-104(a). The Tennessee Public Participation Act's special petition to dismiss "provide[s] an additional substantive remedy to protect the constitutional rights of parties" and "supplement[s] any remedies which are otherwise available to those parties under common law, statutory law, or constitutional law or under the Tennessee Rules of Civil Procedure." Tenn. Code Ann. § 20-17-109. As such, nothing in the Act "affects, limits, or precludes the right of any party to assert any defense, remedy, immunity, or privilege otherwise authorized by law[,] or [a]ffects the substantive law governing any asserted claim[.]" see Tenn. Code Ann. §§ 20-17-108(4) and (5).

In enacting the Tennessee Public Participation Act, the Tennessee General Assembly forcefully established that:

> The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury. This chapter is consistent with and necessary to implement the rights protected by Article I, §§ 19 and 23, of the Constitution of Tennessee, as well as by the First Amendment to the United States Constitution, and shall be construed broadly to effectuate its purposes and intent.

Tenn. Code Ann. § 20-17-102. Substantively, the Tennessee Public Participation Act also provides, among other things, that:

(1) When a defendant has been sued in response to the party's exercise of the right to free speech, he or she is entitled to file a special petition to dismiss the legal action, Tenn. Code Ann. § 20-17-104(a);

(2) Discovery is automatically stayed, except the court may allow specified and limited discovery relevant to the petition upon a showing of good cause, Tenn. Code Ann. § 20-17-104(d);

(3) A prevailing petitioner may be awarded reasonable attorney's fees, discretionary costs, and other expenses, and the court may award additional relief to deter the plaintiff from filing future frivolous SLAPP-suits, Tenn. Code Ann. § 20-17-107(a); and

(3) In the event that the petition is denied, the petitioning party is entitled to an immediate interlocutory appeal as of right, Tenn. Code Ann. § 20-17-106.

A petition to dismiss an action under the TPPA "may be filed within sixty (60) calendar days from the date of service of the legal action or, in the court's discretion, at any later time that the court deems proper." See Tenn. Code Ann. § 20-17-104(b). Under the TPPA, "[t]he petitioning party has the burden of making a prima facie case that a legal action against the petitioning party is based on, relates to, or is in response to that party's exercise of the right to free speech, right to petition, or right of association." Tenn. Code Ann. § 20-17-105(a). Thereafter, the Court "shall dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim in the legal action." Tenn. Code Ann. § 20-17-105(b). However, "[n]otwithstanding subsection (b), the court shall dismiss the legal action if the petitioning party establishes a valid defense to the claims in the legal action." Tenn. Code Ann. § 20-17-105(c).

## B. The Plaintiff's Complaint Should be Dismissed Pursuant to the TPPA.

### 1. Applicability of the Tennessee Public Participation Act.

The TPPA provides that "[i]f a legal action is filed in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may petition the court to dismiss the legal action." *See* Tenn. Code Ann. § 20-17-104(a). Pursuant to Tenn. Code Ann. § 20-17-103(3), "'[e]xercise of the right of free speech' means a communication made in connection with a matter of public concern or religious expression that falls within the protection of the United States Constitution or the Tennessee Constitution." In turn, the TPPA provides that:

"Matter of public concern" includes an issue related to:

(A) Health or safety;

(B) Environmental, economic, or community well-being;

(C) The government;

(D) A public official or public figure;

(E) A good, product, or service in the marketplace;

(F) A literary, musical, artistic, political, theatrical, or audiovisual work; or

(G) Any other matter deemed by a court to involve a matter of

public concern[.]

Tenn. Code Ann. § 20-17-103(6).

Here, Mr. Martins statements qualify as "a communication made in connection with a matter of public concern" under several independent criteria, including "health or safety," "environmental, economic or community well-being," "a good, product, or service in the marketplace," and "any other matter deemed by a court to a involve a matter of public concern." *See id.* Consequently, for purposes of the TPPA, this action qualifies as one filed in response to

9

Mr. Martin's exercise of the right of free speech in several independent regards.  See Tenn. Code Ann. §§ 20-17-104(a); 20-17-103(3); 20-17-103(6).

### 2. Grounds for Granting Mr. Martin's TPPA Petition.

The Tennessee Public Participation Act provides that "[t]he petitioning party has the burden of making a prima facie case that a legal action against the petitioning party is based on, relates to, or is in response to that party's exercise of the right to free speech, right to petition, or right of association."  Tenn. Code Ann. § 20-17-105(a).  As noted above, Mr. Martin's comments in a private Facebook group involves, at minimum, services in the marketplace, and that basis alone—along with several others—qualifies this action as one filed in response to a party's "exercise of the right of free speech" within the meaning of the Tennessee Public Participation Act.  See Tenn. Code Ann. §§ 20-17-104(a); 20-17-103(3); 20-17-103(6)(E).  See also Tenn. Code Ann. § 20-17-103(6)(A), (B), and (G).  Thus, Mr. Martin having met his initial burden of production, see Tenn. Code Ann. § 20-17-105(a), this Court "shall dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim in the legal action."  Tenn. Code Ann. § 20-17-105(b).

### IV.  CONCLUSION

Mr. Martin has met his burden under Tenn. Code Ann. § 20-17-105(a) of making a prima facie case that the action filed by the Plaintiffs "is based on, relates to, or is in response to that party's exercise of the right to free speech, right to petition, or right of association."  Mr. Martin's private Facebook post to Camp Ravine homeowners was a "communication made in connection with a matter of public concern" in that it related to "health or safety," "environmental, economic or community well-being," "a good, product, or service in the marketplace," and "any other matter deemed by a court to involve a matter of public concern."

For these reasons, the Court should dismiss Plaintiffs' Complaint pursuant to the TPPA.

Respectfully submitted,

*/s/ John P. Nefflen*
John P. Nefflen, TN BPR No. 20226
Shackelford, Bowen, McKinley &
Norton LLP
1 Music Cir. S., Ste. 300
Nashville, TN 37203
Telephone: (615) 256-7200
Facsimile: (615) 329-4485
JBowen@shackelford.law
jnefflen@shackelford.law

*Attorneys for Defendant Charles Joshua Dale Martin*

## CERTIFICATE OF SERVICE

I certify that on June 14, 2021, the foregoing *DEFENDANT MARTIN'S PETITION TO DISMISS PURSUANT TO THE TENNESSEE PUBLIC PARTICIPATION ACT* was filed electronically with this Court and served by operation of the Court's Case Management / Electronic Case Filing System on:

Eugene N. Bulso, Jr.
BULSO, PLC
155 Franklin Road, Ste. 400
Brentwood, TN 37027
gbulso@bulso.com

*/s/ John P. Nefflen*
John P. Nefflen