## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **FRANK MUCERINO III and** | ) | |
| **CREEKSIDE TERRACE, LLC,** | ) | |
| | ) | |
|    **Plaintiffs** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-00284** |
| | ) | |
| **CHARLES JOSHUA DALE MARTIN,** | ) | |
| | ) | |
|    **Defendant** | ) | |

## DEFENDANT MARTIN'S MEMORANDUM OF LAW IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS

### I. <u>INTRODUCTION</u>

Defendant submits this Memorandum of Law in Support of his Rule 12(b)(6) Motion to Dismiss. Plaintiffs' Complaint fails to state a claim for defamation because Defendant's statements, made in a private Facebook post, are (1) not defamatory as a matter of law, and (2) not actionable under Tennessee law. Plaintiffs' Complaint fails to state a claim for false light invasion of privacy because (1) Defendant's statements do not cast Plaintiff Mucerino in a false light, (2) Defendant's statements are not actionable, and (3) Defendant's statements were not widely publicized.

### II. <u>FACTS</u>

Until June 23, 2021, Defendant owned a home in the Camp Ravine Estates subdivision ("Camp Ravine") located in the Town of Burns, Dickson County, Tennessee. (**Exhibit 1**, Martin Decl., ¶ 2.) Camp Ravine was developed and built by Plaintiffs. (Compl., Doc. 1, ¶¶ 1, 9, and 10.) Plaintiff Mucerino is an owner and founder of Plaintiff Creekside Terrace, LLC. (Compl., Doc. 1, ¶ 1.)

**A.** **Defendant's Private Facebook post on March 22, 2021.**

Defendant posted the statements at issue on March 22, 2021 in a private Facebook group named "Residents of Camp Ravine Estates & Cottages at Sycamore Ridge." Defendant stated:

> Hey neighbors, I'm sure all of you are aware that there are many unresolved issues with our neighborhood that the developer is responsible for, but we know he has no plans to fix them and is now reportedly moving away.
>
> It seems to me the advice of the city attorney to lawyer up will be a waste of time and money especially if Frank the developer claims bankruptcy.
>
> In my opinion, the best course of action would be to schedule a time on the City Hall agenda to have our case heard with all of the problems the engineer has noted that Karla Cobbs has posted here previously. This will require everyone to participate, attend, and compile evidence of the issues caused by the developer.
>
> Please let me know your thoughts.

(Ex. 1, ¶ 3 and Ex. A; Compl., Doc. #1, ¶ 15.)

Plaintiffs claim that the statements, "there are many unresolved issues with our neighborhood that the developer is responsible for, but we know he has no plans to fix them and is now reportedly moving away," and "[i]t seems to me the advice of the city attorney to lawyer up will be a waste of time and money especially if Frank the developer claims bankruptcy," defamed Plaintiffs Mucerino and Creekside Terrace, LLC and placed Plaintiff Mucerino in a false light. (Compl., Doc. #1, ¶¶ 19-21.)

2

## B.  Numerous Camp Ravine Deficiencies were Documented by the Town of Burn's Engineer.

Defendant is a member of the private Facebook group which, as of March 22, 2021, had 55 members consisting of Camp Ravine and Cottages of Sycamore Ridge[1] home owners. Members of "Residents of Camp Ravine Estates & Cottages at Sycamore Ridge" use the private Facebook group to discuss issues related to Camp Ravine. (Ex. 1, ¶¶ 4-5.) While living at Camp Ravine, Defendant has learned of many unresolved constructing defects and deficiencies at Camp Ravine. The "unresolved issues" referenced in his post included (a) neglected/deteriorating drainage sites in Camp Ravine, (b) lack of sidewalks or curbs in Camp Ravine even though they are shown on the plans, and (c) a high erosion potential with no mitigation plans. (Ex. 1, ¶ 6-7.)

The "unresolved issues" also included numerous "problems the engineer has noted that Karla Cobbs has posted here previously." (Ex. 1, ¶ 8.)  The "problems the engineer has noted" were listed in a chart posted by Karla Cobbs, a member of the private Facebook group, on January 1, 2021 (the "Chart"). The Chart was prepared by the Town of Burns' engineer and listed numerous unresolved construction defects and deficiencies at Camp Ravine, including the following issues: (1) the lack of erosion prevention and sediment control across the entire Camp Ravine, as demonstrated by a silt fence which was not erected and over an inch of mud on some roadways; (2) drainage issues for lots 47, 48, 49; (3) grading on Lot 47; (4) improperly installed fire hydrants; (5) lack of sidewalks throughout Camp Ravine; (6) storm water diversion around ditches; (7) failure to install curb and gutter inlets in Camp Ravine Phase 6; (8) failure to install sediment basins; and (9) no site stormwater detention. Defendant received a copy of the Chart prior to March 22, 2021. (Ex. 1, ¶¶ 9-11 and Ex. B.)

---

[1] Cottages at Sycamore Ridge is another subdivision developed by the Plaintiffs.  *See Creekside Terrace LLC v. Town of Burns Municipal Planning Commission, et al.,* United States District Court for the Middle District of Tennessee Case No. 3:21-cv-00248, Compl., Doc. 1, ¶ 2, a case also before this Court.

3

**C.**    <u>**Defendant's Post Was in Response to Proposed Litigation.**</u>

Defendant posted his statements in response to proposed litigation against Plaintiffs arising out of their refusal to fix the numerous issues at Camp Ravine. (Ex. 1, ¶ 12.) Prior to March 22, 2021, Defendant was advised that Camp Ravine owners spoke with the Town of Burns' attorney, Timothy V. Potter, regarding Plaintiffs' failure to resolve the outstanding defects and deficiencies. Defendant was further advised that Mr. Potter suggested Camp Ravine homeowners retain an attorney and sue the Plaintiffs. (Ex. 1, ¶¶ 13-14.) On December 30, 2020, Karla Cobbs posted in the private Facebook group:

> Partial update from attorney [Mr. Potter]:
>
> The attorneys office is currently working with city engineers in order to determine the next course of action. **There was no compliance by the developer.** Mr. Potter advised a decision should be made in the next couple of weeks.
>
> I request clarification yesterday regarding understand developer shut down if not comply.
>
> **Attorney also mentioned he encourages we the homeowners to seek our own legal counsel.** Didn't say why and is the other item requested clarification.

(Ex. 1, ¶ 15 and Ex. C.)

On March 21, 2021 Karla Cobbs' posted an update in the private Facebook in which she again conveyed Mr. Potter's suggestion that Camp Ravine residents obtain their own attorney:

> Requested update from city attorney ….
>
> **He also advised, as previously suggested, homeowners should seek independent legal advice. The firm does not represent individual homeowners in the subdivision.**
>
> ***
> Some may have seen builder's local home is under contract, possible moving out of state.

4

> **As for legally moving forward, is way out of my experience and honestly budget. Others that can assist, please.**

(Ex. 1, ¶ 16 and Ex. D.)

Defendant understood Mr. Potter's recommendation that Camp Ravine homeowners retain an attorney to mean that Camp Ravine homeowners should sue the Plaintiffs. Defendant's March 22, 2021 post was in direct response to recommendations by Mr. Potter and other members of the private Facebook group that Camp Ravine homeowners should sue the Plaintiffs. (Ex. 1, ¶¶ 17-18 and Ex. E.)

As Defendant conveyed in his response, Defendant believed that litigation would be a waste of time and money if Plaintiff Mucerino filed bankruptcy. Defendant was concerned that Plaintiff Mucerino would file bankruptcy because of Karla Cobbs' report that his home was for sale and that he may be moving out of state (which turned out to be true) despite the numerous unresolved issues remaining at Camp Ravine. Defendant's concern that Plaintiff Mucerino's might file bankruptcy also arose from a comment made by Mike Brooks in the private Facebook group that "[i]f the developer files for bankruptcy [at] least the neighborhood would be in line for financial restitution if there was any financial judgment." Defendant also believed that addressing the numerous unresolved issues at Camp Ravine directly with the BMPC would result in a more efficient resolution. (Ex. 1, ¶¶ 19-21 and Ex. E.)

## D.    Plaintiffs Have Refused to Correct the Camp Ravine Defects.

Defendant genuinely believed Plaintiffs were responsible for correcting the numerous defects and deficiencies at Camp Ravine because Plaintiffs developed and built Camp Ravine. Defendant also genuinely believed Plaintiffs had no intention of fixing the unresolved issues. (Ex. 1, ¶¶ 22-23.) Defendant's beliefs were well founded and shared by the Town of Burns.

For example, Defendant learned that on May 22, 2017, Plaintiffs sought a variance from the Town of Burns' subdivision regulations requiring that sidewalks be installed at Camp Ravine, that the BMPC denied Plaintiffs' request for a variance, and that as of March 22, 2021, Plaintiffs had not installed required sidewalks at Camp Ravine. (Ex. 1, ¶ 24 and Ex. F.)

Defendant also knew that on November 4, 2020, the BMPC called a special meeting, that the Town of Burns' engineer attended, to address defects and deficiencies at Camp Ravine. (Ex. 1 ¶ 25.) On November 9, 2020, the BMPC sent a letter to Plaintiffs summarizing resolutions adopted on November 4, 2020, related to the unresolved issues at Camp Ravine (the "Letter"). (**Exhibit 2**, Letter 11/9/202.)[2] The Letter advised Plaintiffs that after hearing from, the Town of Burns' engineer, Mr. Blackburn, and citizens concerning issues related to Camp Ravine, the Town of Burns (1) instructed Mr. Blackburn to create a formal report identifying unresolved defects at Camp Ravine, and (2) instructed the Town of Burns' attorney to file for injunctive relief to stop the issuance of building permits and certificates of occupancy if the developer did not provide "As-Builts" and drainage calculations for all phases of Camp Ravine. (Ex. 2.)

Instead of working with the Town of Burns' engineer to resolve the issues at Camp Ravine, Plaintiff Creekside Terrace, LLC sued the BMPC, the chairman of the BMPC, a BMPC planner, and even the Town of Burns' attorney, Mr. Potter, in the matter *Creekside Terrace LLC v. Town of Burns Municipal Planning Commission, et al.*, United States District Court for the Middle District of Tennessee Case No. 3:21-cv-00248, a case which is also pending before this Court.

In its theory of the case included in the Initial Case Management Order filed on June 16, 2021, the BMPC makes it clear that it believes Plaintiff Creekside Terrace was not in compliance

---

[2] Plaintiff Creekside Terrace, LLC attached the Letter to its Complaint in the matter *Creekside Terrace LLC v. Town of Burns Municipal Planning Commission, et al.,* United States District Court for the Middle District of Tennessee Case No. 3:21-cv-00248, Doc. #1-1.

6

with the preliminary plat and applicable regulations and that Plaintiff Creekside Terrace has failed

to cooperate with the Town of Burns' engineer to resolve defects and deficiencies at Camp Ravine:

> The Town of Burns Municipal Planning Commission ("BMPC") approved the preliminary plat for Camp Ravine Estates in 2015 . . . . In 2020, the Town received notice that Plaintiff was not in compliance with the preliminary plat and conditions that were approved by the BMPC for Camp Ravine Estates. With proper notice, the BMPC held a special called meeting on November 4, 2020 to address the deficiencies in Camp Ravine Estates. Plaintiff was asked to provide 'as-built' drawings and drainage calculations within 30 days. Up to that point, Plaintiff had failed to provide drainage calculations, which were required by the BMPC when the plats were approved.. **Plaintiff was also advised to consult with the Town's engineer regarding other deficiencies and/or deviations from the preliminary plat for Camp Ravine Estates. Plaintiff failed to cooperate with the Town's engineer.**
>
> ***
>
> **Plaintiff continues to fail to comply with the preliminary plat and applicable regulations and continues to refuse to cooperate with the Town and its engineer.**

**(Exhibit 3**, *Creekside Terrace LLC v. Town of Burns Municipal Planning Commission, et al.*,

United States District Court for the Middle District of Tennessee Case No. 3:21-cv-00248, Doc.

#18, Initial Case Management Order, pp. 2-3.)

At the time Defendant posted the statements at issue, he knew of the findings made by the

Town of Burns' engineer, as set out in the Chart, he knew that the Town of Burns was attempting

to hold Plaintiffs responsible for the unresolved deficiencies at Camp Ravine, and he knew that

Plaintiffs refused to correct many of those deficiencies. (Ex. 1, ¶ 26.)

### III. <u>ARGUMENT</u>

A.    <u>Rule 12(b)(6).</u>

"In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court

will 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as

true, and draw all reasonable inferences in favor of the plaintiff.'" *Chill v. Farmers Ins. Co.*, 2021 WL 638124, at *1 (M.D. Tenn. Feb. 18, 2021) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).

**B.    Defendant's Statements Are Not Defamatory As A Matter of Law.**

Tennessee substantive law applies in this defamation and false light privacy action. *See Hudik v. Fox News Network, LLC*, 2021 WL 62832, at *4 (M.D. Tenn. Jan.7 2021) (finding that under the *Erie* doctrine, Tennessee substantive law applied to a defamation case filed in federal court sitting in diversity).  To establish a prima facie case of defamation under Tennessee law, a plaintiff must prove that: "(1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001).

**1.    Whether a Statement is Defamatory is a Matter of Law.**

Regardless of the Plaintiffs' allegations and characterization of Defendant's statements, the Tennessee Court of Appeals and Supreme Court have instructed that, "the issue of whether a communication is capable of conveying a defamatory meaning is a question of law for the court to decide in the first instance . . . ." *Brown v. Mapco Express, Inc.*, 393 S.W.3d 696, 708 (Tenn. Ct. App. 2012). *See also McWhorter v. Barre*, 132 S.W.3d 354, 364 (Tenn. Ct. App. 2003) ("The question of whether [a statement] was understood by its readers as defamatory is a question for the jury, but the preliminary determination of whether [a statement] is 'capable of being so understood is a question of law to be determined by the court.'" (quoting *Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 419 (Tenn. 1978)).

8

Plaintiffs' characterization of Defendant's statements as defamatory is not entitled to any deference in the Court's analysis under Fed. R. Civ. P. 12(b)(6). "In determining whether a complaint is sufficient under the standards of [*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)] and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), it may be appropriate to 'begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth.' *Iqbal*, 556 U.S. at 680, 129 S.Ct. 1937. Identifying and setting aside such allegations is crucial, because they simply do not count toward the plaintiff's goal of showing plausibility of entitlement to relief." *Hudik*, 2021 WL 62832, at *4.

2.    **Defendants' Statements Did not Defame Plaintiffs.**

Defendant's statements are not defamatory as a matter of law because they do not hold Plaintiffs up to public hatred, contempt, or ridicule and they do not carry an element of disgrace. In Tennessee, merely unpleasant or embarrassing statements are not capable of conveying a defamatory meaning. Instead,

> [f]or a communication to be [defamatory], **it must constitute a serious threat to the plaintiff's reputation.** A [defamation] does not occur simply because the subject of a publication finds the publication annoying, offensive or embarrassing. **The words must reasonably be construable as holding the plaintiff up to public hatred, contempt or ridicule. They must carry with them an element "of disgrace."**

*Davis v. Covenant Presbyterian Church of Nashville*, 2015 WL 5766685, at *3 (Tenn. Ct. App. Sept. 30, 2015) (quoting *Brown*, 393 S.W.3d at 708) (emphases added). Further, the "statement alleged to be defamatory must be judged within the context in which it was made . . . [and] 'should be read as a person of ordinary intelligence would understand [it] in light of the surrounding circumstances.'" *Aegis Scis. Corp. v. Zelenik*, 2013 WL 175807, at *6 (Tenn. Ct. App. Jan. 16, 2013) (internal citations omitted).

9

In this case Defendant's statements are not defamatory on their face and when judged in the context of Camp Ravine homeowners searching for a solution to fix the numerous unresolved issues at Camp Ravine. No reasonable person of ordinary intelligence could understand Defendant's statements as holding Plaintiffs up to public hatred, contempt, or ridicule or as carrying an element of disgrace to the Plaintiffs. Rather, Defendant's statements addressed a problem created by the Plaintiffs' refusal to correct the numerous defects and deficiencies at Camp Ravine.

While Defendant's statements may have been annoying or embarrassing to the Plaintiffs, they certainly do not rise to the level of defamation. Defendant's statements were factually true. There are many documented unresolved issues at Camp Ravine for which Plaintiffs, as the developer, are responsible. Defendant or any other Camp Ravine homeowner would allege the same in a lawsuit against Plaintiffs. *Cf. Davis,* 2015 WL 5766685, at *4 (holding pastor's statements to his congregation were not capable of conveying a defamatory meaning when the statements were factually true and expressed his opinion that the plaintiff's allegations were false, just has the pastor would allege in an answer to the plaintiff's complaint). Further, Defendant expressed his opinion that Camp Ravine homeowners should take their complaint to the Town of Burns rather than litigate against the Plaintiffs.

Defendant's statements do not pose a serious threat to Plaintiffs' reputation, they do not hold Plaintiffs up to public hatred, contempt, or ridicule, and they do not contain an element of disgrace. On its face and in the context in which Defendant posted in the private Facebook group, Defendant's statements cannot, as a matter of law, be construed as defamatory. Therefore, Plaintiffs have failed to state a claim upon which relief can be granted, and the Court should dismiss Plaintiffs' Complaint with prejudice.

10

## C.    Defendant's Statements are not Actionable as a Matter of Law.

Even if Defendant's statements were defamatory, Tennessee courts have adopted categorical bars that prevent defamation claims from moving forward, several of which are outcome-determinative here:

*First*, the litigation privilege extends to "communications preliminary to proposed or pending litigation. *Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 159 (Tenn. Ct. App. 1997) (quoting Restatement of Torts sec. 587)

*Second*, Tennessee has adopted the "substantial truth doctrine" with respect to defamation cases. See *Isbell v. Travis Elec. Co.*, 2000 WL 1817252, at *5 (Tenn. Ct. App. Dec. 13, 2000).

*Third*, Tennessee courts hold that comments, characterizations, and opinions based on published facts are not actionable. See generally *Stones River Motors, Inc. v. Mid-S. Publ'g Co.*, 651 S.W.2d at 720-22 (Tenn. Ct. App. 1983), abrogation on other grounds recognized by *Zius v. Shelton*, 2000 WL 739466, at *3 (Tenn. Ct. App. June 6, 2000).

*Fourth*, An alleged defamatory statement "must be factually false in order to be actionable." *See Moman v. M.M. Corp.*, 1997 WL 167210, at *4 (Tenn. Ct. App. Apr. 10, 1997). Therefore, statements that reflect subjective theories or are related to future events are not actionable because they cannot be proven false.

### 1.    Defendant's Statements are Protected by the Litigation Privilege.

Defendant's statements are protected by the litigation privilege because they were made preliminary to proposed litigation. The litigation privilege protects "statements made in the course of judicial proceedings which are relevant and pertinent to the issues and are absolutely privileged and therefore cannot be used as a basis for a libel action for damages." *Jones v Trice*, 360 S.W.2d 48, 50 (Tenn. 1962). This is true even if the statements are "known to be false or even malicious."

11

*Id.* In Tennessee, the litigation privilege extends to "communications preliminary to proposed or pending litigation" which are absolutely privileged. *Myers*, 959 S.W.2d at 159 (quoting Restatement of Torts sec. 587).

On December 30, 2020 and March 21, 2021, Karla Cobbs posted in the private Facebook group that the Town of Burns' attorney, Mr. Potter, suggested that Camp Ravine homeowners seek independent legal advice regarding their rights against Plaintiffs, which Defendant reasonably understood to mean that Camp Ravine homeowners should sue the Plaintiffs. Defendant's statements were made in response to and preliminary to proposed litigation against the Plaintiffs and are, therefore, absolutely privileged. *Cf. Issa v. Benson*, 420 S.W.3d 23, 28 (Tenn. Ct. App. 2013) (holding defendant's statement that if plaintiff filed suit, he "would accuse [plaintiff] of bribery in an attempt to obtain support for the request to rezone," was in response to *proposed* litigation and was protected by the litigation privilege). The *Issa* defendant's "statement was a communication preliminary to proposed litigation, and as such fell within the litigation privilege . . . certain communications made with respect to litigation, including proposed litigation, also enjoy absolute privilege. These privileges exist on the basis of strong public policy reasons." *Id.*, at *29.

Defendant's statements are protected by the litigation privilege. Consequently, Plaintiffs have failed to state a claim for defamation.

## 2. **Defendant's Statements are True or Substantially True.**

Defendant's statements are not actionable because they are true or substantially true. Tennessee has adopted the "substantial truth doctrine" with respect to defamation cases. *See Isbell*, 2000 WL 1817252, at *5. "Truth is an absolute defense 'when the defamatory meaning conveyed by the words is true.'" *Id.* (quoting *Nichols*, 569 S.W.2d at 420).

> The damaging words must be factually false. If they are true, or
> essentially true, they are not actionable, even though the published

12

Case 3:21-cv-00284   Document 24   Filed 07/12/21   Page 12 of 21 PageID #: 202

> statement contains other inaccuracies which are not damaging. Thus, the defense of truth applies so long as the "sting" (or injurious part) of the statement is true. "... it is not necessary to prove the literal truth of the accusation in every detail, and that it is sufficient to show that the imputation is substantially true, or, as it is often put, to justify the 'gist,' the 'sting,' or the 'substantial truth' of the defamation."

*Id.* (quoting *Stones River*, 651 S.W.2d at 719-20). Thus, statements that are true or substantially true are not actionable as defamation as a matter of law.

Defendant's assertion that there are many unresolved issues at Camp Ravine, that the developer is responsible for those issues, and the developer has no intent on fixing those issue are all true or substantially true. The Town of Burns' engineer has documented numerous unresolved defects and deficiencies at Camp Ravine. As the developer, Plaintiffs are responsible for those issues. Further, the numerous defects and deficiencies at Camp Ravine remain unresolved as demonstrated by the Chart prepared by the Town of Burns' engineer, the BMPC's November 9, 2020 letter to Plaintiffs, and BMPC's assertion that Plaintiff Creekside Terrace, LLC continues to violate the preliminary plat and applicable regulations and refuses to cooperate with the Town of Burns' engineer to fix the issues at Camp Ravine.

Defendant's statements posted on March 22, 2021 are not actionable because his statements were true or substantially true.

### 3. Defendant's Statements are Characterizations and Opinions Based on Disclosed Nondefamatory Facts.

Defendant's statements are not actionable because they are characterizations and opinions based on previously publicly disclosed facts. The court in *Stones River* explained that characterizations and opinions based on disclosed nondefamatory facts are not actionable, even if the characterization is strong and abusive.

13

In its recent revision of the chapters on libel in the *Restatement (Second) of Torts,* the American Law Institute adopted the following principle regarding expressions of opinions:

A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

*Restatement (Second) of Torts* § 566 (1977). The ALI formulated a distinction between two types of expressions of opinion, one which is not actionable and the other which is:

... A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently.

\*\*\*

*Restatement (Second) of Torts* § 566 Comment c, p. 173 (1977).

\*\*\*

. . . it is now a matter of constitutional law, that statements of opinion or characterizations based upon disclosed nondefamatory facts are not defamatory even though they are stated in strong or abusive terms.

*Stones River*, 651 S.W.2d at 720–21. In Tennessee, "an opinion is not actionable as [defamation] unless it implies the existence of unstated defamatory facts." *Id.* at 722.

Here, Defendant expressed his opinions that there were many unresolved issues at Camp Ravine, the developer was responsible for those unresolved issues, and the developer had no intention of fixing those issues. Defendant's opinions were based on (1) Plaintiffs' attempt to get a variance so they would not have to install sidewalks, (2) the information contained in the Chart, which was published in the private Facebook group, (3) his knowledge that the Town of Burns was attempting to hold Plaintiffs responsible for the unresolved deficiencies at Camp Ravine, and

14

(4) information posted by Karla Cobbs, including her summary of communications with the Town of Burns' attorney. Defendant's characterizations and opinions are based on previously disclosed nondefamatory information. Therefore, his opinions made on March 22, 2021 are not actionable no matter how unjustified, unreasonable, or derogatory Plaintiffs may believe they are.

Further, Defendant's opinion that, "[i]t seems to me the advice of the city attorney to lawyer up will be a waste of time and money especially if Frank the developer claims bankruptcy," was based on Karla Cobbs' report on March 21, 2021 that Plaintiff Mucerino was selling his house and may be moving out of state (which was a true statement) while there were so many unresolved issues at Camp Ravine; and on Mike Brooks comment, "[i]f the developer files for bankruptcy [at] least the neighborhood would be in line for financial restitution if there was any financial judgment."

Defendant's opinions are not actionable as a matter of law because they were based on disclosed nondefamatory facts.

### 4. <u>Statements Related to Future Events are not Actionable.</u>

An allegedly defamatory statement "must be factually false in order to be actionable." *See Moman*, 1997 WL 167210, at *4. Thus, any statement that is not capable of being proven false as a matter of fact cannot form the basis for a defamation claim. *See id.* In this case, Defendant's statement, "[i]t seems to me the advice of the city attorney to lawyer up will be a waste of time and money especially if Frank the developer claims bankruptcy," is not capable of being proven false as a matter of fact. Defendant did not claim Mr. Mucerino will file bankruptcy or even that Mr. Mucerino will likely file bankruptcy. Instead, he merely suggested that litigation against the developer would be a waste of time and money if the developer files bankruptcy (which is generally a true statement).

15

Statements about potential future events cannot be proven false and they cannot be construed as objectively verifiable false facts as a consequence. *See, e.g.*, *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) ("[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." (citing *Milkovich* v. *Lorain Journal, Co.*, 497 U.S. 1, 17–21 (1990) (other citations omitted)).

Defendant's statement, "if he files bankruptcy" is not capable of being proven false. Therefore, Defendant's statement is not actionable. *Cf. Oracle USA, Inc. v. Rimini Street, Inc.*, 2010 WL 4386957, at *3 (D. Nev. Oct. 29, 2010) ("[S]tatements concerning the future financial stability of a business is a nonactionable statement of opinion. [Defendant's] statements are predictions of the future that could not be proven true or false at the time the statements were made. Therefore, these statements are not defamatory. Accordingly, the court will grant [the defendant's] motion to dismiss as to these allegations of defamation.").

## D. Plaintiffs' Claim for Defamation by Implication Fails as a Matter of Law.

For the same reasons that Defendant's statement about future events is not actionable, Plaintiffs' claim for defamation by implication (Compl., Doc. #1, Count IV) must fail. Defamation by implication occurs when a statement which is literally true and does not appear defamatory on its face implies or suggests a defamatory meaning. *Loftis v. Rayburn*, 2018 WL 1895842, *5 (Tenn. Ct. App. Apr. 20, 2018). "'The rationale behind this rule is that, when **truthful statements** carry a defamatory innuendo, the factual implication should also be true to justify the implication.'" *Id.* (quoting *Isbell*, 2000 WL 1817252, at *6) (itself quoting *Fitzgerald v. Tucker*, 737 So.2d 706, 717 (La. 1999) (emphasis added)). *See also Hudik*, 2021 WL 62832, at *13 ("Defamation by implication occurs when statements that are true are nevertheless actionable because they imply

16

facts that are not true") (citing *Aegis Scis.*, 2013 WL 175807, at *11). Defendant's statement, "if Frank the developer files bankruptcy" is not a true statement, nor is it a false statement. The statement is incapable of being verified as true or false. Therefore, it cannot be the basis for defamation by implication and Plaintiffs' claim for defamation by implication fails as a matter of law.

Further, no reasonable person would interpret Defendant's statement to mean that Plaintiff Mucerino is financially unstable or would declare bankruptcy unjustly in order to avoid legal responsibilities. (*See* Compl, Doc. #1, ¶ 35.) Moreover, "financially unstable person" does not hold Plaintiff Mucerino up to public hatred, contempt, or ridicule and it does not carry an element of disgrace, especially when millions of Americans have suffered and are suffering financial hardship as a result of the pandemic, the increasing cost of housing, medical care, and child care, and job loss.

**E.**     **<u>Plaintiff Mucerino's Claim for False Light Privacy Fails as a Matter of Law.</u>**

In Tennessee, the tort of false light invasion of privacy is defined as:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Eisenstein v. WTVF-TV, News Channel 5 Network, LLC*, 389 S.W.3d 313, 317 (Tenn. Ct. App. 2012) (citing Restatement (Second) of Torts § 652E (1977)); *West v . Media Gen. Convergence, Inc.* 53 S.W.3d 640, 643-44 (Tenn. 2001)).

At issue in a false light privacy claim is whether "the angle from which the facts are presented, or the omission of certain material facts, results in placing the plaintiff in a false light.'" *Eisenstein*, 389 S.W.3d at 317 (quoting *Santillo v. Reedel*, 634 A.2d 265, 267 (1993)). "[T]he falsehood involved in a false light action 'may consist in dissemination of matters which, while technically true, give an objectionably false impression where the communicator fails to modify the basic statement with amplifying facts which modify the statement to create a less objectionable impression corresponding to full reality.'" *Id.* at 18 (quoting Russell G. Donaldson, Annotation, *False Light Invasion of Privacy—Cognizability and Elements*, 57 A.L.R.4th 22, § 13 (Cum.Supp.2012)).

### 1. **False Lights Claims are Analyzed Like Defamation Claims.**

Although a separate tort, "[i]n recognition of the kinship between defamation and false light, the Tennessee Supreme Court has defined the contours of the tort of false light with reference to the Tennessee law on defamation." *Gallagher v. E.W. Scripps Co.,* 2009 WL 1505649, *7 (W.D. Tenn. May 28, 2009). "Therefore, like defamation, the Court must make the preliminary determination about whether a defendant made discrete presentations of information in a fashion which rendered the publication susceptible to inferences casting the plaintiff in a [legally actionable] false light." *Id.*

With respect to the requisite degree of harm that a statement must be capable of producing in order to be actionable, defamation and false light claims are subject to a materially indistinguishable inquiry. As a result, the relevant analysis is appropriately - and routinely - conflated. *See, e.g., Harris v. Gaylord Entm't Co.,* 2013 WL 6762372, at *6 n.3 (Tenn. Ct. App. Dec. 19, 2013) ("Statements alleged to be defamatory or to place another in a false light must harm the reputation of the complaining party to be actionable.... Courts may determine as a matter of

18

law whether a statement is defamatory or place[s] another in a false light because in each instance the standard is that of the 'reasonable person.'"); *Eisenstein*, 389 S.W.3d at 318, n. 5 (noting that "there is significant and substantial overlap between false light and defamation," and indicating that the "distinction blurs... in jurisdictions... where courts recognize defamation by implication") (quotations omitted).

### 2. Plaintiff Mucerino's False Light Claim Fails as a Matter of Law.

Plaintiff Mucerino's claim for false light invasion of privacy fails for the same reasons Plaintiffs' defamation claims fail.

*First*, Defendant's statement, "there are many unresolved issues with our neighborhood that the developer is responsible for, but we know he has no plans to fix them and is now reportedly moving away," is a true statement and is incapable of casting Plaintiff Mucerino in any false light, much less one that a reasonable person would find highly offensive. While a reasonable person of ordinary intelligence may view Plaintiff Mucerino as a developer who does not take responsibility for his actions, which in the context of Camp Ravine is accurate, nothing in Defendant's statement would cause a person to view him as "loathsome." (*See* Compl., Doc. #1, ¶ 28.)

*Second*, Defendant's statement, "if Frank the developer claims bankruptcy" is neither a truthful statement, nor is it a false statement. The statement is incapable of being verified as true or false, and it is not a "fact" which places Plaintiff Mucerino in a false light as a "financially unstable person." Moreover, "financially unstable person" is not so highly offensive to a reasonable person as to be actionable for false light invasion of privacy, especially when millions of Americans have suffered and are suffering financial hardship as a result of the pandemic, the increasing cost of housing, medical care, and child care, and job loss.

19

*Third*, Defendant's statements are protected by the litigation privilege. *See Myers*, 959 S.W.2d at 159 (holding that "communications preliminary to proposed or pending litigation" are absolutely privileged). *Cf. Mouloki v. Epee*, No. 14 C 5532, 2016 WL 910496, *3 (N.D. Ill. Mar. 10, 2016) (holding litigation privilege bars false light claim).

*Fourth*, Defendant's statements, made in a private Facebook group consisting of 55 members, does not satisfy the publicity requirement for false light privacy claims. To be actionable, the offending statements must be "'made public, by communicating [them] to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Brown*, 393 S.W.3d at 707 (quoting *Secured Fin. Solutions, LLC v. Winer*, 2010 WL 334644, *4 (Tenn. Ct. App. Jan. 28, 2010)). Defendant's communication to "one person or a small group of persons" "'fails, as a matter of law, to satisfy the 'publicity' requirement of the tort of false light invasion of privacy.'" *Id.* (quoting *Winer*, 2010 WL 334644, at *4).

For theses reasons, Plaintiff Mucerino's false light privacy claim fails as a matter of law and should be dismissed.

## IV.    <u>CONCLUSION</u>

As demonstrated above, Plaintiffs' Complaint fails to state a claim upon which relief can be granted. Defendant's statements are not defamatory as a matter of law, and they are not actionable as a matter of law. Further, Defendant's statements do not cast Plaintiff Mucerino in a false light as a matter of law, and they are not actionable as a matter of law. For these reasons, the Court should dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

20

Respectfully submitted,


_____
*/s/ John P. Nefflen*
John P. Nefflen, TN BPR No. 20226
Rebekah L. Shulman, TN BPR No. 27357
Shackelford, Bowen, McKinley &
Norton LLP
1 Music Cir. S., Ste. 300
Nashville, TN 37203
Telephone: (615) 256-7200
Facsimile: (615) 329-4485
jnefflen@shackelford.law
rshulman@shackelford.law

*Attorneys for Defendant Charles Joshua Dale Martin*


## **CERTIFICATE OF SERVICE**

I certify that on July 12, 2021, the foregoing *DEFENDANT MARTIN'S MEMORANDUM OF LAW IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS* was filed electronically with this Court and served by operation of the Court's Case Management / Electronic Case Filing System on:

Eugene N. Bulso, Jr.
BULSO, PLC
155 Franklin Road, Ste. 400
Brentwood, TN 37027
gbulso@bulso.com


_____
*/s/ John P. Nefflen*
John P. Nefflen